# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MICAELLA ONA,
individually and on behalf of all those
similarly situated,

Plaintiff,

CASE NO.: 1:26-cv-22392-CMA

vs.

INSOMNIAC HOLDINGS, LLC,

Defendant.
_______________________________/

**IAN HUMPHREY'S DECLARATION IN SUPPORT OF VERIFIED MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOTION TO DISMISS**

I, Ian Humphrey, declare as follows:

1. I am VP, Business & Legal Affairs of Insomniac Holdings, LLC ("Insomniac"). I submit this declaration in support of Insomniac's Motion to Compel Arbitration and, in the Alternative, Dismiss the Complaint (the "Motion").

2. I am over the age of eighteen and am competent to make this declaration. The facts stated in this declaration are based on my personal knowledge, my review of Insomniac's business records, my knowledge of Insomniac's business practices and ticketing relationships, and my review of records maintained by or made available to Insomniac in the ordinary course of business by its ticketing partners and corporate affiliates. If called as a witness, I could and would testify competently to the matters stated herein.

3. As VP, Business & Legal Affairs, my responsibilities include, among other things, oversight of legal matters for Insomniac, review of contractual terms applicable to Insomniac events and ticketing transactions, and coordination with Insomniac's ticketing partners, parent companies, and affiliates regarding legal issues, customer records, event records, and ticketing records.

4. Insomniac hosts, promotes, manages, operates, and/or is affiliated with music festivals, concerts, and related live entertainment events, including events at or associated with a venue in Miami, Florida known as Factory Town.

5. Factory Town is a venue in Miami, Florida that is managed and operated by Insomniac.

6. Insomniac uses various ticketing/ticket selling platforms, including DICE FM Inc. ("DICE") to sell tickets to Factory Town events.

7. Insomniac also hosts other events across Florida and the United States using other ticketing/ticket selling platforms, such as Front Gate Ticketing Solutions, LLC ("Front Gate"), to sell tickets to Insomniac and Insomniac-affiliated events.

8. Front Gate is an affiliate of Insomniac through common ownership and control of Live Nation Entertainment, Inc.

9. In connection with this litigation, I reviewed business records concerning Plaintiff Micaella Ona's ticket purchases and account activity associated with Insomniac and Insomniac-affiliated events. Those records include records maintained by or for Insomniac and records made available to Insomniac by DICE and Front Gate in connection with ticket purchases.

10. Those records are maintained in the regular course of business. The records are made at or near the time of the events recorded by persons or automated systems with knowledge of the events recorded, and it is the regular practice of the relevant business entities to maintain such records.

11. The screenshots included with Insomniac's Motion are true and accurate copies of representative screenshots of the relevant ticket-purchase flows. To the extent any screenshot uses example purchaser information or test-account information, the screenshot is representative of the process presented to purchasers and is not intended to show Plaintiff's actual personal information unless expressly stated otherwise.

12. The transaction summaries contained in this declaration are true and accurate summaries of Plaintiff's ticketing records that I reviewed. To protect customer privacy, personal identifiers such as email addresses, telephone numbers, account IDs, and order numbers may be redacted in the publicly filed version.

13. DICE is a ticketing platform available at www.dice.fm. DICE has been used to sell tickets for Factory Town events promoted, operated, managed, or otherwise associated with Insomniac.

14. Insomniac is an "Event Partner" for purposes of DICE ticket sales for the Factory Town events identified below.

15. Based on my review of the records, Plaintiff purchased tickets through DICE, through the website www.dice.fm, for the following Factory Town events:

| Event | Date |
|---|---|
| Martin Garrix / Miss Monique / SLUGG - Race Weekend | 5/3/26 |
| III Joints 2026 | 4/18/26 |
| Factory Town Music Week 2026 (5-Day Pass) | 3/25/26 |
| Disco Lines | 1/17/26 |
| Factory Basel 2025 (Week Pass) | 12/3/25 |
| Hocus Pocus 2025 (3-Day Pass) | 10/31/25 |
| Cloonee's Hellbent / Deep House Bible / PIV Records Showcase | 3/26/25 |
| Mayan Warrior Galaxyer Fundraiser (The Park Stage) + Seth Troxler B2B Victor Calderone (Chain Room) (Factory Basel Opening 2024) | 12/5/24 |
| Hocus Pocus 2024 (Halloween Night) | 10/31/24 |
| III JOINTS 2024 | 4/20/24 |
| elrow Miami Music Week: RowsAttacks! 2024 + PIV | 3/24/24 |
| ARTCORE / ELI BROWN / MADAFAKAZ - SATURDAY MMW | 3/23/24 |
| ZHU, Hayden James & Miss Monique (NYE Weekend) | 12/29/23 |
| Factory Town Basel Pass 2023 | 12/7/23 |

| **Event** | **Date** |
|---|---|
| **III JOINTS 2023** | **4/20/23** |
| **elrow: Miami Music Week Edition 2023** | **3/23/23** |
| **AFTERLIFE MIAMI 2022** | **12/2/22** |
| **Hocus Pocus (DAY 3) - Sunday** | **10/30/22** |

16. For the DICE purchases identified above, Plaintiff was required to proceed through DICE's online purchase flow to complete each transaction.

17. The DICE purchase flow for Factory Town events begins when a purchaser selects the desired event page. The event page contains event information, including ticketing information and FAQs.

18. The Factory Town event page includes a ticketing terms-and-conditions section directing purchasers to Insomniac's Terms of Use. A representative screenshot of that page is included as a screenshot in the Motion. In the screenshot, the FAQ section states that Factory Town's ticketing policies can be found at Insomniac's Terms of Use.

19. A true and correct copy of Insomniac's Terms of Use applicable to the relevant transactions is attached as Exhibit B to the Motion. Insomniac's Terms of Use were also available at https://www.insomniac.com/terms-of-use/.

20. Insomniac's Terms of Use include a section titled "Disputes, Including Mandatory Arbitration and Class Action Waiver." That section provides, in substance, that the user and Insomniac agree that any dispute, claim, or controversy relating in any way to the Terms, the user's use of the site, or products or services sold, distributed, issued, or serviced by or through Insomniac will be resolved by binding, individual arbitration rather than in court. The provision also states that the parties waive any right to a jury trial and may bring claims against each other only in an individual capacity, not as a plaintiff or class member in any purported class or representative proceeding.

21. To continue with a DICE purchase, a purchaser must select the event and click the purchase button, such as "Buy Now."

22. After clicking the purchase button, the purchaser is taken to a ticket-selection and checkout screen. On that screen, the purchaser selects a ticket type and quantity and proceeds to checkout.

23. The DICE checkout screen displays an agreement notice in close proximity to the checkout controls. The notice states that by purchasing, the user will receive an account and agrees to DICE's general Terms of Use, Privacy Policy, and Ticket Purchase Terms. The phrases "Terms of Use," "Privacy Policy," and "Ticket Purchase Terms" are displayed as hyperlinks. A true and correct copy of the DICE Ticket Purchase Terms applicable to the relevant transactions is attached as Exhibit C to the Motion. The DICE Ticket Purchase Terms were also available at https://dicefm.zendesk.com/hc/en-gb/articles/4412965076881-United-States-Purchase-Terms.

24. The DICE Ticket Purchase Terms state that DICE is a disclosed ticketing agent selling tickets through its app on behalf of promoters, organizers, managers, artists, and venues of music, entertainment, sports, and similar events, referred to in the terms as "Event Partners."

25. The DICE Ticket Purchase Terms also provide that any ticket purchased or otherwise acquired through DICE is subject to the DICE Purchase Terms, DICE Terms of Use, DICE Privacy Policy, applicable event terms and conditions, and any additional terms and conditions of the relevant Event Partner that can be found on the Event Partner's website or are disclosed during the ticket purchase process.

26. For Factory Town events sold through DICE, Insomniac was the relevant Event Partner whose terms were disclosed and incorporated through the DICE purchase process.

27. After a purchaser proceeds to checkout, the purchaser is prompted to enter payment information. Before completing payment, the DICE payment screen again displays a terms notice stating that by purchasing, the purchaser agrees to DICE's general Terms of Use, Privacy Policy, and Ticket Purchase Terms.

28. A purchaser cannot complete a DICE ticket purchase without proceeding through these checkout and payment screens and affirmatively selecting the applicable purchase controls.

29. The DICE purchase process described above was the same for each of Plaintiff's DICE purchases identified in paragraph 12.

30. Plaintiff completed each DICE purchase identified in paragraph 12. Based on the DICE purchase flow and records I reviewed, Plaintiff proceeded through the DICE checkout

process and voluntarily assented to the applicable DICE terms and the incorporated Insomniac/Event Partner terms in order to complete those purchases.

31. The Hocus Pocus 2025 event identified in Plaintiff's DICE purchase records is the same event, or relates to the same event series, depicted in the text-message screenshot in Plaintiff's Complaint. The Complaint's screenshot refers to "The Hocus Pocus" and "set times," and Plaintiff's records reflect that she purchased a Hocus Pocus 2025 three-day pass through DICE.

32. Plaintiff's claims in this case are based on alleged marketing text messages concerning Insomniac's events, goods, or services. The alleged Hocus Pocus text message therefore relates to Insomniac events and services for which Plaintiff purchased tickets and agreed to the terms described above.

33. Front Gate is a ticketing platform available at www.frontgatetickets.com. Front Gate sells tickets for live events, including events associated with Insomniac, Insomniac affiliates, and other Live Nation Entertainment, Inc.-affiliated entities.

34. As I noted above, Insomniac and Front Gate are affiliates under common corporate ownership and control. Both are owned, in whole or in part, by Live Nation Entertainment, Inc.

35. Based on my review of Front Gate records, Plaintiff purchased tickets through Front Gate for the following events:

- a. **Rolling Loud Miami: (1) Saturday GA**
- b. **III Points: (1) 2-DAY GA**
- c. **EDC Orlando 2024: (1) 3-DAY VIP**
- d. **III Points 2024: (1) 2-Day GA**
- e. **III Points 2025: (1) 2-Day GA**
- f. **EDC Orlando 2026: (1) 3-Day VIP**
- g. **III Points 2026: (1) 2-Day GA**

36. To purchase tickets through Front Gate, a purchaser must either log in to an existing account or create an account.

37. Before logging in or creating an account, a purchaser is presented with Front Gate's Terms of Use and is required to agree to those Terms of Use by checking a box. The account-creation screen expressly states that the purchaser agrees to Front Gate's Terms of Use, including the arbitration agreement and class action waiver.

38. A representative screenshot of the Front Gate account-creation screen is included in the Motion.

39. A true and correct copy of Front Gate's Terms of Use applicable to the relevant transactions is attached as Exhibit F to the Motion. Front Gate's Terms of Use were also available at https://www.frontgatetickets.com/legal/terms-of-use.

40. Front Gate's Terms of Use state that they govern the user's use of Front Gate's websites and applications, including Front Gate's website, and the user's purchase, possession, sale, acceptance, or use of tickets or passes, products, or services.

41. Front Gate's Terms of Use define "us," "we," and "our" to refer to Front Gate and all of Front Gate's parents, subsidiaries, and affiliates.

42. Front Gate's Terms of Use include a notice regarding arbitration and class action waiver, stating that the terms contain an arbitration agreement and class action waiver and that, subject to limited exceptions, disputes will be resolved by binding arbitration rather than in court.

43. Front Gate's Terms of Use also include a section titled "Disputes and Arbitration." That section states, in substance, that the parties agree that any dispute, claim, or controversy relating in any way to the terms or the user's use of the marketplace, including products or services sold, distributed, issued, or serviced by or through Front Gate, will be resolved by binding arbitration rather than in court. The provision further states that the parties waive any right to a jury trial and may bring claims against each other only in an individual capacity, not as a plaintiff or class member in any purported class proceeding.

44. Front Gate's Terms of Use also state that, by agreeing to arbitration, the user and Front Gate waive any right to participate in a class action lawsuit or class arbitration, subject to any exceptions stated in the terms.

45. Before a purchaser is permitted to finalize a Front Gate ticket purchase, the purchaser is taken to a "Review & Confirm" screen.

46. On the "Review & Confirm" screen, the purchaser is required to check a box next to language stating that the purchaser has read and agrees to Front Gate's current Terms of Use

and Terms of Sale, including the arbitration agreement and class action waiver. The phrases "Terms of Use" and "Terms of Sale" are hyperlinked to the respective agreements.

47. A representative screenshot of the Front Gate "Review & Confirm" screen is included in the Motion.

48. A purchaser cannot finalize a Front Gate ticket purchase without checking the box agreeing to Front Gate's Terms of Use and Terms of Sale.

49. If a purchaser attempts to complete a purchase without checking the required agreement box, the purchaser remains on the same "Review & Confirm" screen and the relevant required text is displayed in red. A representative screenshot showing this required-field warning is included in the Motion.

50. If a purchaser clicks the link to the Terms of Sale, a pop-up or other display presents the Terms of Sale to the purchaser. A representative screenshot of that display is included in the Motion.

51. A true and correct copy of Front Gate's Terms of Sale applicable to the relevant transactions is attached as Exhibit G to the Motion. Front Gate's Terms of Sale were also available at https://www.frontgatetickets.com/legal/terms-of-sale.

52. Front Gate's Terms of Sale state that they apply to ticket and pass purchases and purchases of associated products and services on Front Gate's websites and applications, and to the use of Front Gate tickets, products, and services.

53. Front Gate's Terms of Sale state that, when a purchaser purchases tickets and associated products and services through Front Gate, the purchaser agrees to be bound by the Terms of Sale and Front Gate's Terms of Use.

54. Front Gate's Terms of Sale also direct purchasers to Section 14 of Front Gate's Terms of Use, which contains the arbitration agreement and class action waiver.

55. Front Gate's Terms of Sale define "us," "we," and "our" to include Front Gate and all of Front Gate's parents, subsidiaries, and affiliates.

56. For every Front Gate purchase identified in paragraph 32, Plaintiff was required to log in or create an account and agree to Front Gate's Terms of Use. Plaintiff was also required to agree to Front Gate's Terms of Use and Terms of Sale at the "Review & Confirm" stage before completing the purchase.

57. Front Gate's records reflect that Plaintiff completed the purchases identified in paragraph 32. Because the Front Gate system does not permit a purchaser to complete a ticket purchase without checking the agreement box, Plaintiff necessarily checked the agreement box and agreed to Front Gate's Terms of Use and Terms of Sale for each purchase.

58. Plaintiff therefore agreed to Front Gate's arbitration agreement and class action waiver in connection with each Front Gate purchase identified above.

59. I have reviewed the Complaint in this action. The Complaint alleges that Insomniac sent Plaintiff marketing text messages after 9:00 p.m. concerning Insomniac's events, property, goods, or services.

60. The screenshot included in the Complaint depicts a message concerning Hocus Pocus, including set times. Plaintiff's DICE records reflect that Plaintiff purchased a Hocus Pocus 2025 three-day pass through DICE.

61. Based on my review of Insomniac's records, DICE records, and Front Gate records, Plaintiff's relationship with Insomniac and Insomniac-affiliated events was not limited to the single text message alleged in the Complaint. Plaintiff repeatedly purchased tickets for Insomniac, Factory Town, and/or Insomniac-affiliated events through ticketing platforms whose purchase flows required assent to arbitration agreements and class-action waivers.

62. The alleged text messages in the Complaint concern event-related marketing and communications relating to Insomniac's events, products, and services. Those are the same type of events, products, and services for which Plaintiff purchased tickets and accepted the terms described in this declaration.

63. Based on the records described above, Plaintiff agreed to arbitrate disputes with Insomniac and/or Insomniac-affiliated entities and agreed not to pursue class or representative claims in court.

64. Insomniac did not receive any notice from Plaintiff before this lawsuit stating that she rejected the arbitration provisions, class-action waivers, Insomniac Terms of Use, DICE Ticket Purchase Terms, Front Gate Terms of Use, or Front Gate Terms of Sale.

65. The exhibits attached to the Motion and the screenshots included therein are true and correct copies of the records, screenshots, terms, and summaries described above, or true and accurate representative images of the purchase flows described above.

66. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 20, 2026, at Los Angeles, California.

Ian Humphrey
VP, Business & Legal Affairs
Insomniac Holdings, LLC