# **EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MICAELLA ONA,
individually and on behalf of all those
similarly situated,

Plaintiff,

CASE NO.: 1:26-cv-22392-CMA

vs.

INSOMNIAC HOLDINGS, LLC,

Defendant.
_____________________________________/

**DECLARATION OF CHRISTOPHER DONOHUE, FRONT GATE TICKETING SOLUTIONS, LLC**

I, Christopher Donohue, declare as follows:

1. I am Christopher Donohue of Front Gate Ticketing Solutions, LLC ("Front Gate"). I am over the age of eighteen and am competent to make this declaration.

2. I submit this declaration in support of Defendant Insomniac Holdings, LLC's Motion to Compel Arbitration and, in the Alternative, Dismiss the Complaint.

3. The facts stated in this declaration are based on my personal knowledge, my knowledge of Front Gate's business practices and records, and my review of records maintained by Front Gate in the ordinary course of business. If called as a witness, I could and would testify competently to the matters stated herein.

4. Front Gate operates a ticketing platform through which customers may purchase tickets, passes, and related products or services for live events.

5. Front Gate maintains records concerning customer accounts, ticket purchases, ticket types, order histories, and related transaction information in the ordinary course of business. Those records are made at or near the time of the events recorded by persons or automated systems with knowledge of the events recorded, and it is Front Gate's regular practice to make and maintain such records.

6. In connection with this litigation, I reviewed Front Gate records associated with Plaintiff Micaella Ona.

7. Front Gate's records reflect that Plaintiff created a user account with Front Gate and purchased tickets through Front Gate for the following events:

a. Rolling Loud Miami: one Saturday GA ticket;

b. III Points: one 2-Day GA ticket;

c. EDC Orlando 2024: one 3-Day VIP ticket;

d. III Points 2024: one 2-Day GA ticket;

e. III Points 2025: one 2-Day GA ticket;

f. EDC Orlando 2026: one 3-Day VIP ticket; and

g. III Points 2026: one 2-Day GA ticket.

8. To create an account or complete a purchase through Front Gate, customers proceed through Front Gate's online account creation and purchase flow.

9. Front Gate's standard purchase flow requires customers to assent to applicable Front Gate purchase terms before completing a ticket purchase.

10. Before logging in or creating an account, a purchaser is presented with Front Gate's Terms of Use and is required to agree to those Terms of Use by checking a box. The account-creation screen expressly states that the purchaser agrees to Front Gate's Terms of Use, including the arbitration agreement and class action waiver.

11. A representative screenshot of the Front Gate account-creation screen is included in the Motion.

12. A true and correct copy of Front Gate's Terms of Use applicable to the relevant transactions is attached as Exhibit F to the Motion. Front Gate's Terms of Use were also available at https://www.frontgatetickets.com/legal/terms-of-use

13. Front Gate's Terms of Use state that they govern the user's use of Front Gate's websites and applications, including Front Gate's website, and the user's purchase, possession, sale, acceptance, or use of tickets or passes, products, or services.

14. Front Gate's Terms of Use define "us," "we," and "our" to refer to Front Gate and all of Front Gate's parents, subsidiaries, and affiliates.

15. Front Gate's Terms of Use include a notice regarding arbitration and class action waiver, stating that the terms contain an arbitration agreement and class action waiver and that, subject to limited exceptions, disputes will be resolved by binding arbitration rather than in court.

16. Front Gate's Terms of Use also include a section titled "Disputes and Arbitration." That section states, in substance, that the parties agree that any dispute, claim, or controversy relating in any way to the terms or the user's use of the marketplace, including products or services sold, distributed, issued, or serviced by or through Front Gate, will be resolved by binding arbitration rather than in court. The provision further states that the parties waive any right to a jury trial and may bring claims against each other only in an individual capacity, not as a plaintiff or class member in any purported class proceeding.

17. Front Gate's Terms of Use also state that, by agreeing to arbitration, the user and Front Gate waive any right to participate in a class action lawsuit or class arbitration, subject to any exceptions stated in the terms.

18. Before a purchaser is permitted to finalize a Front Gate ticket purchase, the purchaser is taken to a "Review & Confirm" screen.

19. On the "Review & Confirm" screen, the purchaser is required to check a box next to language stating that the purchaser has read and agrees to Front Gate's current Terms of Use and Terms of Sale, including the arbitration agreement and class action waiver. The phrases "Terms of Use" and "Terms of Sale" are hyperlinked to the respective agreements.

20. A representative screenshot of the Front Gate "Review & Confirm" screen is included in the Motion.

21. A purchaser cannot finalize a Front Gate ticket purchase without checking the box agreeing to Front Gate's Terms of Use and Terms of Sale.

22. If a purchaser attempts to complete a purchase without checking the required agreement box, the purchaser remains on the same "Review & Confirm" screen and the relevant required text is displayed in red. A representative screenshot showing this required-field warning is included in the Motion.

23. If a purchaser clicks the link to the Terms of Sale, a pop-up or other display presents the Terms of Sale to the purchaser. A representative screenshot of that display is included in the Motion.

24. A true and correct copy of Front Gate's Terms of Sale applicable to the relevant transactions is attached as Exhibit G to the Motion. Front Gate's Terms of Sale were also available at https://www.frontgatetickets.com/legal/terms-of-sale.

25. Front Gate's Terms of Sale state that they apply to ticket and pass purchases and purchases of associated products and services on Front Gate's websites and applications, and to the use of Front Gate tickets, products, and services.

26. Front Gate's Terms of Sale state that, when a purchaser purchases tickets and associated products and services through Front Gate, the purchaser agrees to be bound by the Terms of Sale and Front Gate's Terms of Use.

27. Front Gate's Terms of Sale also direct purchasers to Section 14 of Front Gate's Terms of Use, which contains the arbitration agreement and class action waiver.

28. Front Gate's Terms of Sale define "us," "we," and "our" to include Front Gate and all of Front Gate's parents, subsidiaries, and affiliates.

29. For every Front Gate purchase identified in paragraph 32, Plaintiff was required to log in or create an account and agree to Front Gate's Terms of Use. Plaintiff was also required to agree to Front Gate's Terms of Use and Terms of Sale at the "Review & Confirm" stage before completing the purchase.

30. Front Gate's records reflect that Plaintiff completed the purchases identified in paragraph 32. Because the Front Gate system does not permit a purchaser to complete a ticket purchase without checking the agreement box, Plaintiff necessarily checked the agreement box and agreed to Front Gate's Terms of Use and Terms of Sale for each purchase.

31. Plaintiff therefore agreed to Front Gate's arbitration agreement and class action waiver in connection with each Front Gate purchase identified above.

32. Based on Front Gate's records, Plaintiff completed the Front Gate purchases identified in paragraph 7, and, for each and every single one, assented to the Terms of Use and Terms of Sale.

33. Insomniac Holdings, LLC ("Insomniac") is an "affiliate" of Front Gate as that term is used, referenced, and contemplated in the Front Gate Terms of Sale. Front Gate and Insomniac are affiliated entities under common corporate ownership and control.

34. Front Gate and Insomniac collaborate in connection with ticket sales for Insomniac and Insomniac-affiliated events. In that relationship, Front Gate provides ticketing-platform

services that may include event ticket listings, ticket inventory management, customer checkout, order processing, ticket issuance, and maintenance of transaction records. Insomniac and/or its affiliated event partners provide event-related information, including information concerning events, ticket types, pricing, availability, and related event details.

35. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 20, 2026, at 8:15am PDT.

Christopher Donohue
General Manager
Front Gate Ticketing Solutions, LLC